**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Keila Robles-Figueroa *on behalf of her minor daughter Kamila*<br><br>    Plaintiff,<br><br>    v.<br><br>Presbyterian Community Hospital, Inc., et al.,<br><br>    Defendants | **Civil. No. 22-cv-01361 (GMM)** |

**OPINION AND ORDER**

On July 29, 2022, a minor, Kamila, represented by her mother Keila Robles Figueroa ("Plaintiff" or "Mrs. Robles"), filed a Complaint against Dr. Juan C. Castañer, Presbyterian Community Hospital, Inc. ("the Hospital") and to Hospital Pediátrico Universitario alleging claims of medical malpractice under Puerto Rico state law. (Docket No. 1). Pending before the Court is the *Motion In Limine To Exclude Dr. Carolyn Crawford's Testimony as an Expert on Autism and Her Causation Opinions Regarding Autism or Autistic-Like Behaviors* ("*Motion in Limine*". (Docket No. 88). For the reasons stated below, the *Motion in Limine* is **GRANTED**.

**I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY**

This is a medical malpractice case in which Plaintiff alleges that Dr. Juan C. Castañer ("Dr. Castañer"), the Hospital and the Hospital Pediátrico Universitario (collectively "Defendants") deviated from the standards of care. The allegations of negligence

are centered on the medical care provided to Mrs. Robles and her baby during her pregnancy, delivery, and the neonatal care of her premature infant.

On August 30, 2024, the Hospital filed *Motion In Limine* (Docket No. 88). The Hospital argues that Dr. Carolyn Crawford ("Dr. Crawford") is neither qualified by education, training, and experience, to opine on the topic autism or its causes, nor does her report or deposition testimony present opinions that can be said to be based on reliable methodology or rest on sufficient factual foundation. On September 10, 2024, Dr. Castañer filed a *Motion for Joinder* as to the motions in limine filed by the Hospital at Docket Nos. 86, 87 and 88. (Docket No. 102).

On October 7, 2024, Plaintiff filed *Plaintiff's Opposition to Codefendant's Motion in Limine at Docket No. 88 & 90*. Plaintiff argues that Dr. Crawford has the necessary expertise to opine on autism and autistic-like behavior in children, as to assist the fact-finder. *See* (Docket No. 127). She also argues that concerns about Dr. Crawford's qualifications and methodology go to "the weight of the testimony, rather than admissibility, which is properly reserved for the jury." (Id. at 11). The Hospital filed a *Reply to Plaintiff's Opposition To The Hospital's Motion In Limine at Docket No. 88* on November 18, 2024. (Docket No. 141). On November 25, 2024, Dr. Castañer filed a *Motion for Joinder* as to

Case 3:22-cv-01361-GMM    Document 169    Filed 01/27/25    Page 3 of 12

Civil. No. 22-cv-01361(GMM)
Page -3-

motions filed by the Hospital at Docket Nos. 139, 140, 141, 142 and 143. (Docket No. 149).

## II. APPLICABLE LAW

Federal Rule of Evidence 702 permits testimony by experts qualified by "knowledge, skill, expertise, training, or education," to testify "in the form of an opinion or otherwise" based on "scientific, technical, or other specialized knowledge" if that testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The expert's testimony must be based on "sufficient facts or data," it must be "the product of reliable principles and methods," and the expert must have "applied the principles and methods reliably to the facts of the case." Id.

The proponent of expert testimony bears the burden of establishing by a preponderance of the evidence that the admissibility requirements are met. See id., Advisory Committee Notes. Although there is a presumption of admissibility, Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 588 (1993), the trial court is obliged to act as a "gatekeeper" regarding the admission of expert scientific testimony under Rule 702. See id. at 597. "This entails a preliminary assessment of whether the reasoning or methodology is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Id.

Case 3:22-cv-01361-GMM    Document 169    Filed 01/27/25    Page 4 of 12

Civil. No. 22-cv-01361(GMM)
Page -4-

at 592-93. The Court possesses broad discretion to determine whether proffered expert testimony meets Daubert's requirements for admissibility. *See* Carballo Rodriguez v. Clark Equip. Co., 147 F.Supp.2d 81, 83 (D.P.R. 2001) ("When assessing the reliability of technical or specialized expert testimony, as opposed to scientific testimony, the trial judge exercises 'broad latitude' both in how it determines the reliability of the testimony, and in the ultimate reliability determination." *Citing* Kumho Tire Co. v. Carmichael, 526 U.S. 137, 149 (1999)).

"The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." Daubert, 509 US at 595. "So long as an expert's scientific testimony rests upon good grounds, based on what is known, it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities." Lopez-Ramirez v. Toledo-Gonzalez, 32 F.4th 87, 94 (1st Cir. 2022) (*quoting* Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 15 (1st Cir. 2011)) (internal quotations omitted).

In determining whether an expert's reasoning or methodology is scientifically valid, the district court can consider "many factors," including: (1) whether the scientific theory or technique can be (or has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3)

whether a particular technique has a known potential rate of error; and (4) whether the theory or technique is generally accepted in the relevant scientific community. Daubert, 509 U.S. at 593-94.

To be sure, "[t]rained experts commonly extrapolate from existing data. But nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." General Electric Co. v. Joiner, 522 U.S. 136, 146 (1997). Accordingly, expert testimony may be excluded when there is "too great an analytical gap between the data and the opinion proffered." Id. at 146.

The Supreme Court has indicated that the test of reliability is "flexible," and Daubert's list of specific factors neither necessarily nor exclusively applies to all experts or in every case. Rather, the law grants a district court the same broad latitude when it decides how to determine reliability as it enjoys in respect to its ultimate reliability determination. *See* Kumho Tire Co., 526 U.S. at 141-42.

### III. ANALYSIS

In her expert report dated December 30, 2022, Plaintiff's expert, Dr. Crawford, provided her analysis of Kamila's medical history, including alleged deficiencies in the prenatal care received by her mother, Mrs. Robles, and the perinatal and neonatal

care she received after her birth. See (Docket No 88-2). Defendants challenge the statements in her expert report that relate specifically with Kamila's neurological status, including certain "autistic-like behaviors." (Id. at 8-10). Specifically, Dr. Crawford writes, [Kamila] is developmentally delayed, nonverbal, and recently a diagnosis of autism has been suggested. . .Her neurological injury is the result of her prematurity 'Plus.' The 'Plus' is the contribution from sepsis, hypotension, DIC, hypoxia/ischemia from multiple apneic episodes in the context of non-steroid benefitted RDS and delayed surfactant administration." (Id.). Further, Dr. Crawford writes, "[a]s a result of her episodes of hypoxia and altered perfusion she also suffered irreversible brain damage with resultant developmental delay and abnormal neurological function including autistic-like behavior. No family history of developmental delay, autism or cerebral palsy was identified. Absent her significant RDS and NEC and their sequelae, Kamila would likely have developed normally." (Id. at 9-10).

Defendants argue that testimony of these opinions should be excluded from trial because Dr. Crawford is not qualified to make them, and her methodology lacks a reliable basis.

A. Dr. Crawford's Qualifications

Defendants first argue that Dr. Crawford is not qualified to testify as an expert specifically on issues regarding autism and

autistic-like behaviors in children or its causes. *See* (Docket No. 88 at 5). Pointing to her CV, Defendants state that Dr. Crawford's expert qualifications are limited by her education, training, experience, and academic appointments to "pediatrics and neonatology." Because her CV is devoid of any publications on autism or neurology, Defendants posit, Dr. Crawford's experience reflects a "lack of dedicated research or deep knowledge in the field." (Id.).

Dr. Crawford's CV reflects nearly fifty years of practice in medicine, specifically in the areas of neonatal and perinatal medicine. *See* (Docket No. 88-1 at 3-5). Her experience includes many publications and book chapters in the field of neonatology, including several related to Respiratory Distress Syndrome (RDS). (Id. at 11). Dr. Crawford is an experienced physician in neonatology. Notably missing from her CV is any focus on childhood autism, autistic-like behaviors or pediatric neurology in general.

During her deposition, Dr. Crawford was asked if she would consider herself an expert in pediatric neurology, to which she responded, "Yes. In certain areas, yes." (Docket No. 88-3 at 2). She elaborated: "the kind of complications that you see in premature infants as they develop and mature and age. The type of interventions, the causation of certain types of problems. Certain types of neurological problems." (Id.). After being asked whether

Case 3:22-cv-01361-GMM    Document 169    Filed 01/27/25    Page 8 of 12

Civil. No. 22-cv-01361(GMM)
Page -8-

she is qualified to diagnose someone with autism, she responded, "I think I'm qualified to screen and to discuss with parents, but in terms of actually doing the testing, no. I have not been trained to do the actual testing for autism. But in terms of identifying risk factors and evaluating a child for the possibility of autism, I think, yes, I would consider myself reasonably qualified." (Id.). Despite admitting she lacks the qualifications to diagnose autism in children, Dr. Crawford stated regarding Kamila, "the child does not really have autism. The child may have some autistic-like features related to the brain damage she has." (Id. at 6).

The Court also has the benefit of the analysis from a similar case in this District in which the Court examined Dr. Crawford's qualifications specifically as to her opinions related to autism. *See* Arrieta v. Hosp. Del Maestro, No. CV 15-3114 (MEL), 2018 WL 3425295 (D.P.R. July 13, 2018). From her testimony at a Daubert hearing, the Court in Arrieta relayed that Dr. Crawford, "as part of medical legal reviews, [] has evaluated situations where autistic like behavior has been a manifestation of brain damage." Arrieta, 2018 WL 3425295, at *4. She also testified that autism could not be diagnosed at the newborn stage. *See* id. Magistrate Judge Marcos E. Lopez concluded that because Dr. Crawford's experience was not related to diagnosing autism and she had not issued or contributed to publications on autism or autistic-like

Case 3:22-cv-01361-GMM    Document 169    Filed 01/27/25    Page 9 of 12

Civil. No. 22-cv-01361(GMM)
Page -9-

behavior, Plaintiffs had not shown by the preponderance of the evidence that Dr. Crawford qualified to testify in regard to autism in that case. *See* id.

Here, Plaintiff presents the same expert, Dr. Crawford, to testify to the same matter she was found unqualified to testify on in Arrieta. Although Dr. Crawford is clearly qualified as an expert in neonatology, as her CV and expert report reflects, she may not testify as to matters that fall outside of her expertise. *See* Friedman v. Cent. Maine Power Co., No. 2:20-CV-00237-JDL, 2024 WL 1327344, at *2 (D. Me. Mar. 28, 2024) ("a witness qualified as expert on certain topics 'does not mean that he or she is qualified to express expert opinions as to other fields.'" *quoting* Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006)); *but see* Pages-Ramirez v. Ramirez-Gonzalez, 605 F.3d 109 (1st Cir. 2010) (finding the District Court erred in excluding Dr. Carolyn Crawford's testimony as to "obstetrical standards of care" based on her qualifications; "[t]he court mistakenly relied on Dr. Crawford's lack of board certification in obstetrics and gynecology to preclude her from testifying.").

In Pages-Ramirez, the First Circuit was able to point to relevant book chapters published by Dr. Crawford on the administration of Pitocin during childbirth, the fact that she participated in peer-reviewed evaluations on obstetrics and

delivery care, and her work drafting guidelines for perinatal emergencies to conclude that Dr. Crawford was qualified to testify on causation and the standards of care for obstetrics. *See* Pages-Ramirez, 605 F.3d at 116. The record here does not similarly reflect Dr. Crawford's qualifications to opine on Kamila's diagnosis and causation of autistic-like behavior. As such, the Court finds that Dr. Crawford's testimony shall be limited to her areas of expertise, namely neonatology, and shall not veer into diagnosis and causation for autism or autistic-like behaviors.

B.  Dr. Crawford's Methodology

The Court has also examined Dr. Crawfords opinions as to Kamila's autistic-like behaviors and the causal link to brain damage and has determined that Plaintiff has not demonstrated that her opinions rest on reliable foundations.

In drafting her expert report, Dr. Crawford reviewed Kamila's medical records, *see* (Docket No. 88-2 at 1), and had a phone interview with Kamila's mother, Keila Robles Figueroa, *see* (id. at 8-9). Based on this review, Dr. Crawford concluded that "[Kamila's] neurological injury is the result of her prematurity 'Plus.' The 'Plus' is the contribution from sepsis, hypotension, DIC, hypoxia/ischemia from multiple apneic episodes in the context of non-steroid benefitted RDS and delayed surfactant administration." (Id. at 8). She further states, "[a]s a result of her episodes of

hypoxia and altered perfusion she also suffered irreversible brain damage with resultant developmental delay and abnormal neurological function including autistic-like behavior. No family history of developmental delay, autism or cerebral palsy was identified. Absent her significant RDS and NEC and their sequelae, Kamila would likely have developed normally." (Id. at 9-10). At her deposition, Dr. Crawford stated that she believes Kamila "has cerebral palsy, has a brain injury, and [she] think[s] her behavior is explainable by the brain damage and not necessarily by some underlying autism." (Docket No. 88-3 at 5-6). When asked what evidence she relied on to support her opinion that Kamila has brain damage, Dr. Crawford stated, "[s]he can't do any self-care. She doesn't eat. She's non-verbal. I think motor-wise she's very delayed. I don't think she walks or runs. She doesn't talk." (Id. at 6). Dr. Crawford also stated that she had not seen an MRI for Kamila but that one "would be an appropriate test to assess her." (Id.).

Daubert directs the Court to assess whether an expert's testimony is the product of reliable principles and methods. Some factors that Court may consider include (1) whether the scientific theory or technique can be (or has been) tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether a particular technique has a known

Case 3:22-cv-01361-GMM    Document 169    Filed 01/27/25    Page 12 of 12

Civil. No. 22-cv-01361(GMM)
Page -12-

potential rate of error, and (4) whether the theory or technique is generally accepted in the relevant scientific community. Daubert, 509 U.S. at 593-94. Here, Plaintiff has not provided any scientific basis for Dr. Crawford's belief that Kamila in fact has brain damage, and that there is a scientific link between brain damage and autism or autism-like behaviors. In this case, there is "too great an analytical gap between the data and the opinion proffered." Joiner, 522 U.S. 142. Plaintiff argues that this is simply a matter in which experts disagree, thus pertains "to the weight of the testimony, rather than admissibility, which is properly reserved for the jury." (Docket No. 127 at 11). The Court disagrees. The record before the Court reveals Plaintiffs failure to demonstrate by a preponderance of evidence that Dr. Crawford's testimony is the product of reliable principles and methods. Consequently, Dr. Crawford's testimony specifically regarding autism, autism spectrum disorder or autism-like behaviors will not be allowed during trial.

## IV. CONCLUSION

For the foregoing reasons, the *Motion in Limine* is **GRANTED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, January 27, 2025.

s/Gina R. Méndez-Miró
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE