IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Keila Robles-Figueroa *on behalf of her minor daughter Kamila*<br><br>Plaintiff,<br><br>v.<br><br>Presbyterian Community Hospital, Inc., et al.,<br><br>Defendants | Civil. No. 22-cv-01361(GMM) |

**OPINION AND ORDER**

On July 29, 2022, a minor, Kamila, who is represented by her mother Keila Robles Figueroa ("Plaintiff" or "Mrs. Robles"), filed a Complaint against Dr. Juan C. Castañer, Presbyterian Community Hospital, Inc. ("the Hospital") and to Hospital Pediátrico Universitario alleging claims of medical malpractice under Puerto Rico state law. (Docket No. 1). Pending before the Court is the *Motion In Limine To Exclude Jocelyn Holt's Testimony As An Expert Witness In Life Care Planning*. (Docket No. 103). For the reasons stated below, the *Motion in Limine* is **DENIED**.

    **I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY**

This is a medical malpractice case in which Plaintiff alleges that Dr. Juan C. Castañer ("Dr. Castañer"), the Hospital and the Hospital Pediátrico Universitario (collectively "Defendants") deviated from the standards of care. The allegations of negligence

are centered on the medical care provided to Mrs. Robles and her baby during her pregnancy, delivery, and the neonatal care of her premature infant.

Relevant here, the Court issued a *Case Management Order* on October 3, 2022, which set discovery to conclude on May 3, 2023. (Docket No. 22). On March 31, 2023, the parties filed a *Joint Motion for Leave to Extend Discovery Deadline and to File a Discovery Plan*, which was granted by the Court. (Docket Nos. 35, 37). Thereby the Court extended discovery until July 31, 2023, and adopted the parties' discovery plan. (Docket No. 35). This discovery plan included July 20, 2023 as the deadline to produce Defendants' expert reports and no additional deadline was established as to Plaintiff's experts, since they had already produced their reports.

On September 5, 2023, the Court set Jury Trial for September 23, 2024. (Docket No. 61). On August 22, 2024, the Parties filed their *Joint Proposed Pretrial Order*. (Docket No. 62). On the same date they filed an *Amended Joint Proposed Pretrial Order*. (Docket No. 64). On August 22, 2024, Dr. Castañer filed a *Motion for Continuance* seeking to move the trial dates. (Docket No. 69). After the matter was briefed, the Court granted the *Motion for Continuance* and sanctioned Dr. Castañer and his counsel with the payment of reasonable fees and costs incurred. (Docket No. 75).

On August 30, 2024, the Hospital filed a series of motions *in limine*. On September 3, 2024, the Jury Trial was reset to commence on February 3, 2025. (Docket No. 96). On September 10, 2024, after the Court granted an extension of time, the Hospital filed the *Motion In Limine* that is now before the Court. (Docket No. 103). On September 16, 2024, Dr. Castañer filed a *Motion for Joinder* as to this *Motion In Limine* filed by the Hospital. (Docket No. 108).

On October 7, 2024, Plaintiff filed *Plaintiff's Opposition to Codefendant's Motion In Limine At Docket No. 103*. On November 18, 2024, the Hospital filed *Reply to Plaintiff's Opposition To The Hospital's Motion In Limine At Docket No. 103* (Docket No. 143). On November 25, 2024, Dr. Castañer filed a *Motion for Joinder* as to motions filed by the Hospital at Docket Nos. 139, 140, 141, 142 and 143. (Docket No. 149). On December 5, 2024, Plaintiff filed *Plaintiff's Sur-Reply to Codefendant's Replies at Docket No. 143* (Docket No. 154).

## II.  APPLICABLE LAW

A.  <u>Rule 702: The Admissibility of Expert Witness</u>

Fed. R. Evid. 702 controls the admissibility of expert witness testimony. *See* <u>Crow v. Marchand</u>, 506 F.3d 13, 17 (1st Cir. 2007) ("The touchstone for the admission of expert testimony in federal court litigation is Federal Rule of Evidence 702."). The Rule dictates:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Fed. R. Evid. 702 assigns a "gatekeeping role for the judge" to ensure that the expert is "sufficiently qualified to assist the trier of fact" and "that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." Daubert v. Merrell Dow Pharm., 509 U.S. 579, 597 (1993); Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147-49 (1999) (holding that Daubert applies to all expert testimony). A trial court "must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." Kumho Tire Co., 526 U.S. at 152. To aid trial judges in their role as gatekeepers, the Daubert Court set forth several factors that may be taken into consideration, none of which are determinative: (i) whether a theory or technique can and has been tested; (ii) whether the theory or technique has been subjected to peer review and publication; (iii) whether the particular scientific technique has a known or potential rate of error; and

(iv) the "general acceptance" of a theory or technique. *See* Daubert, 509 U.S. at 593-94.

To determine that an expert's evidence rests of reliable foundation the district court considers whether "the testimony is based on sufficient facts or data"; whether "the testimony is the product of reliable principles and methods"; and whether "the expert has reliably applied the principles and methods to the facts of the case." Smith v. Jenkins, 732 F.3d 51 (1st Cir. 2013) (*citing* Fed. R. Evid. 702). Where, as here, the factual basis of an expert's testimony is called into question, the district court must determine whether the testimony has "a reliable basis" in light of the knowledge and experience of the relevant discipline. *See* Kumho Tire Co., 526 U.S. at 148. Thus, "nothing in either Daubert or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply "too great an analytical gap between the data and the opinion proffered." General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997).

The Court notes, however, the difference between "unreliable" support and "insufficient" support for an expert witness' conclusion. *See* Martínez v. United States, 33 F.4th 20, 24 (1st Cir. 2022) (*quoting* Milward v. Acuity Specialty Prods. Grp., Inc., 639 F.3d 11, 22 (1st Cir. 2011)). Whether the underpinning of an

expert's opinion is insufficient is "a matter affecting the weight and credibility of the testimony – a question to be resolved by the jury." Id. (*quoting* Milward, 639 F.3d at 22). Conversely, "trial judges may evaluate data offered to support an expert's bottom-line opinions to determine if that data provides adequate support to mark the expert's testimony as reliable." Milward, 639 F.3d at 15 (*quoting* Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co., 161 F.3d 77, 81 (1st Cir. 1998)). "In a motion to exclude pursuant to Daubert, the burden on the party who proffers expert testimony is not to prove that an expert's conclusion is correct but rather that the expert reached their conclusion in a scientifically sound and methodologically reliable way." Id. at 85.

Ultimately, Rule 702 is generally interpreted liberally in favor of the admission of expert testimony. *See* Martínez, 33 F4th at 24 (*quoting* Levin v. Dalva Bros., Inc., 459 F.3d 68, 78 (1st Cir. 2006)).

Furthermore, to ensure reliability and intellectual rigor, experts "must be able to produce a written report or testimony supported by an accepted methodology that is based on substantial scientific, technical, or other specialized knowledge." Figueroa v. Simplicity Plan de Puerto Rico, 267 F.Supp.2d 161, 164 (D.P.R. 2003). "Failure to provide a testimony or a report detailing the basis for the expert's opinion in a comprehensive scientific manner

can cause the expert witness and his report to be eliminated from trial." Id. (citing Justo Arenas & Carol M. Romey, *Professional Judgment Standard and Losing Games for Psychology, Experts and the Courts*, 68 Rev. Jur. U.P.R. 159, 180 (1999)).

### III. DISCUSSION

Through their *Motion in Limine*, the Defendants seek to exclude the testimony of Mrs. Jocelyn Holt ("Mrs. Holt") as an expert witness in life care planning. (Docket No. 103). According to Defendants, Mrs. Holt's limited experience with pediatric patients, particularly infants and children with complex medical conditions like autism and brain injury, and her inexperience in preparing a life care plan for a medical malpractice case is a significant factor in disqualifying her testimony. (Id. at 13). They also posit that Mrs. Holt did not collaborate with or consult any medical experts, including neurologists, pediatricians, or other relevant specialists, before rendering her life care plan. (Id. at 14). Specifically, they sustain that she prepared her life care plan without consulting any of Kamila's treating physicians. In addition, Defendants argue that since Mrs. Holt relied on generalized data from the Center for Disease Control and Prevention ("CDC") as to life expectancy— that is not specific to Kamila's condition— and did not consult appropriate experts, her testimony does not meet the Daubert standards because it lacks a reliable foundation. (Id. at 17). Defendants also question Mrs. Holt's

methodology and conclusions as speculative and unreliable. (Id. at 18-22).

In response, Plaintiff submits that the *Motion In Limine* constitutes and untimely dispositive motion disguised as a motion *in limine*. (Docket No. 129 at 8). To this extent, Plaintiff argues that this District has already held that "a motion *in limine* to exclude the plaintiff's expert on grounds that his opinion is unreliable was not the appropriate tool to move for judgment on a particular claim." (Id. at 9). She argues that "an expert witness may base his opinion on reports, writings or observations not in evidence which were made or compiled by others, so long as they are of a type reasonably relied upon by experts in that particular field." (Id. at 10-11). Plaintiff adds that "[t]he opposing party may challenge the suitability or reliability of such materials on cross-examination, but such challenge goes to the weight to be given the testimony, not to its admissibility." (Id. at 11). Further, Plaintiff argues that Mrs. Holt "is undeniably an expert in her field, and her knowledge and experience will allow her to assist the jury in understanding the damages allegedly sustained by Plaintiff". (Id. at 12).

A. Mrs. Holt's Qualifications

The record reflects that Mrs. Hold is a certified life care planner since 2017. (Docket No. 103-1). She is also a Licensed Occupational Therapist in the state of Florida and a Licensed

Occupational Therapist in the State of North Carolina. (Id.). Mrs. Holt possesses a bachelor's degree in Science, Occupational Therapy with a minor in Health Science Education from the University of Florida. (Id.) In addition, she holds a Life Care Planning Certification Course from the Institute of Rehabilitation Education and Training. Her experience since 2002 has been mainly as an Occupational Therapist, yet since 2018 she is the owner of and life care planner at Planning Hope, LLC in Gainesville, Florida. (Id.).

B.  Mrs. Holt's *Life Care Plan for Keila Robles on behalf of Kamila Robles* ("Life Care Plan Report")

Mrs. Holt's Life Care Plan Report, dated April 18, 2023, indicates that "the recommendations are gathered from information provided by [Kamila's] medical providers through records and evaluations, Keila Robles, evidenced [sic] base practices, as well as knowledge/experience from this Life Care Planner." (Docket No. 103-3 at 3). Moreover, during her deposition, Mrs. Holt admitted that she did not consult any physician before she rendered the Life Care Plan Report. (Docket No. 103-2 at 16). She also stated that the life care plan reflects her opinion, based on her assessment after speaking with Kamila's mother and reviewing her medical record. (Id. at 17). To this extent she expressed that she interviewed Kamila's mother on two (2) different occasions. (Id. at 24). Mrs. Holt used the National Vital Statistic Reports and

CDC data and indicated she was not an expert in life expectancy. (Id. at 20). To that extent, in her Life Care Plan Report, Mrs. Holt clearly states that "[o]pinions on the life expectancy tables are deferred to an appropriate expert." (Docket No. 103-3 at 10). In addition, in page 15 of her Life Care Plan Report, Mrs. Holt list a series of references used to prepare her report, which include various website links including the CDC and other publications from the pediatric and medical field.

Foremost, and Plaintiff admits as much, Mrs. Holt will only testify as a Life Care Planner, and not as to the applicable medical standards of care; the departures from the medical standards of care by Defendants in the treatment of Kamila; or the causal relationship between the alleged departure from the medical standards of care with Kamila's damages. To that extent, in her report, Mrs. Holt references medical history and a summary of the different medical interventions and evaluations performed by Kamila's treating physicians. (Docket No. 103-3 at 4-10). Then, Mrs. Holt lists current providers and treatment and projects the lifetime costs as to physicians, special education services, Applied Behavioral Analysis, Occupational Therapy, Feeding Clinic Speech and Language Therapy, Physical Therapy, among others. (Id. at 13-29).

Although Defendants question the reliability of Mrs. Holt's Life Care Plan, because she did not consult Kamila's physicians,

Courts "have found that there is no requirement that an expert life care planner consult with treating physicians or independent medical doctors before formulating a life care plan." Durr v. GOL, LLC, No. CV 18-3742, 2019 WL 6464971, at *4 (E.D. La. Dec. 2, 2019). Defendants also attack Mrs. Holt's conclusion because of her methodology and basis. However, the Court notes that in the first few pages if his report, Mrs. Holt employed the standard methodology applied by life care planners which requires consideration of: (a) available medical records; (b) assessment of the individual; (c) assessment of the data and the individual's needs, and (d) research of the costs within the relevant geographical area of items needed for the proper care of the patient. This appears to be a sufficiently reasonable and reliable method for formulating a life-care plan. See Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 171 (1st Cir. 2005) (holding that a district court did not abuse its discretion in admitting testimony from a life-care expert which was "based on a review of records from the agency providing her with skilled nursing care, a letter from her physician, and an interview of Fabiola's family and caregiver.").

The Court agrees with the Defendants to the extent that there may be some deficiencies in the strength of support for some of the recommendations in Mrs. Holt's Life Care Plan Report, but, following the reasoning of other courts, particularly the First

**Civil No. 22-1361 (GMM)**
**Page -12-**

Circuit Court of Appeals in <u>Marcano Rivera</u>, the Court concludes that those issues go to the weight, and not the admissibility, of Mrs. Holt's testimony. Mrs. Holt will be able to testify, and be subject to cross-examination, about her opinions in this case. Consequently, the Court declines to exclude her testimony as an expert witness.

### III. CONCLUSION

For these reasons, the *Motion in Limine* is **DENIED**.

IT IS SO ORDERED.

In San Juan, Puerto Rico, January 27, 2025.

<u>s/Gina R. Méndez-Miró</u>
GINA R. MÉNDEZ-MIRÓ
UNITED STATES DISTRICT JUDGE